UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN KEILMAN and CYNTHIA KEILMAN, ) ) ) | |
| Plaintiffs, ) ) | Case No. 17-cv-03683 |
| v. ) ) | Hon. Steven C. Seeger |
| SAM'S WEST, INC., ) ) | |
| Defendant. ) ) | |
| SAM'S WEST, INC., ) ) | |
| Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| HAYES BEER DISTRIBUTING COMPANY, ) ) ) | |
| Third-Party Defendant. ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin Keilman is a truck driver employed by Hayes Beer Distributing Company. He broke his shoulder while delivering beer to a local Sam's Club. He tripped over some shrink wrap that was caught between two pallets on the loading dock. He eventually sued Defendant Sam's West, Inc. (it does business as Sam's Club). Sam's West, in turn, filed a third-party complaint against Hayes Beer Distributing Co. for contribution, breach of contract, and indemnification.

Hayes Beer Distributing Co. now moves for summary judgment. For the reasons stated below, the motion is granted.

**Background**

Early one morning in 2016, Plaintiff Kevin Keilman arrived with a truckload of beer at a Sam's Club. *See* Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 33 (Dckt. No. 96). He had four decades of experience as a truckdriver. *Id.*

Keilman backed into the loading dock and opened the back door of his trailer. *Id.* at ¶ 35. He then went to a back room and sat down while a worker from Sam's Club unloaded the beer. *Id.* at ¶¶ 35–36. His job was to deliver the beer. It was the job of Sam's Club to unload it.

While he waited, Keilman spotted a few pallets of expired beer. *Id.* at ¶ 40. Shrink wrapping, loading, and hauling old beer is part of his job, too. So he grabbed some shrink wrap and covered the pallets of outdated beer. *Id.* at ¶¶ 40–42. He needed a power jack to load the pallets, so he walked back across the loading dock toward his truck. *Id.* at ¶ 43.

On the way, he walked between two pallets belonging to Sam's Club (not the pallets of beer). He was looking straight ahead. *Id.* at ¶ 47. Nothing obstructed his view, and he had nothing in his hands. *Id.* at ¶¶ 45–46.

That's when he fell. He didn't see a tangled piece of shrink wrap on the floor between the two pallets. *Id.* at ¶¶ 51–52. The shrink wrap was see-through, and he didn't see it. So he tripped, fell forward, and broke his right shoulder. *Id.* at ¶¶ 49–50.

The shrink wrap was caught underneath the two pallets, creating something akin to a shrink wrap tripwire. The parties agree that the pallets belonged to Sam's Club, not the beer distributor. *Id.* at ¶¶ 37–39, 43–47, 56. "On April 13, 2016, after Plaintiff fell, Plaintiff was able to see that he had tripped over a tangled-up piece of shrink-wrap that stretched between Sam's

2

Club's two (2) blue pallets." *Id.* at ¶ 51. The shrink wrap was "on the bottom [of] Sam's Club's two (2) blue pallets." *Id.* at ¶ 52.

The parties agree that the shrink wrap was under Sam's Club pallets, not the beer pallets, because the pallets from the two companies are different colors and different sizes. Sam's Club uses blue pallets, but Hayes Beer Distributing Co. uses black pallets. *Id.* And here, the hazardous shrink wrap was under two blue pallets. *Id.* The pallets used by Sam's Club were bigger than the beer pallets, too (five feet by five feet, not four feet by four feet). *Id.*

Keilman did not deliver the pallets that were on top of the hazardous shrink wrap. He did not know who delivered those pallets, or how long the shrink wrap had been there. *Id.* at ¶¶ 53–56. But he did know that he didn't put the Sam's Club pallets on top of the shrink wrap. And he learned the hard way that shrink wrap can cause a serious injury.

Keilman needed surgery for his fractured shoulder. Keilman and his wife ultimately sued Sam's West, Inc., advancing negligence and loss of consortium claims. Sam's West, Inc. is a wholly owned subsidiary of Wal-Mart Stores, Inc. and does business as Sam's Club. *See* Sam's West Inc.'s Statement of Additional Facts, at ¶¶ 1–2 (Dckt. No. 97); *see also* Wal-Mart Stores, Inc. Form 10-K (Dckt. No. 97-9).

Sam's West then filed a third-party complaint against Keilman's employer, Third-Party Defendant Hayes Beer Distributing Co. *See* Third-Party Cplt. (Dckt. No. 22). The third-party complaint includes three claims. Count I is a contribution claim. Sam's West alleges that Hayes Beer Distributing Co. was negligent because Keilman failed to properly wrap the pallet of beer. *Id.* at ¶ 7.

Count II is a breach of contract claim. Sam's West points to a SHORT FORM VENDOR AGREEMENT that allegedly was between "Defendant/Third-Party Plaintiff SAM'S West and

3

Third-Party Defendant Hayes." *Id.* at ¶ 11; *see also* Agreement (Dckt. No. 83-5, at 23 of 39). That Agreement included an indemnification provision that required the "Vendor" to defend, hold harmless, and indemnify "Purchaser" from any claims. *See* Third-Party Cplt., at ¶ 12 (Dckt. No. 22). Sam's West claims that it is entitled to indemnification under that Agreement.

Count III is an indemnification claim. Once again, Sam's West relies on the Agreement and seeks a declaration that it is entitled to indemnification. *Id.* at ¶¶ 17, 20.

## Legal Standard

Rule 56 provides that the Court "shall grant" summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

At the summary judgment stage, the non-moving party cannot rest on the allegations of the pleadings. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted).

The Court "'consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of*

4

*Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

"Summary judgment is not a dress rehearsal or practice run; it 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quoting *Schacht v. Wisconsin Dept. of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). The non-moving party must put its cards on the table and show that a reasonable jury could decide in its favor.

## Discussion

Hayes Beer Distributing Co. moved for summary judgment on all three claims, so the Court will take them up one at a time.

**I.      Negligence**

The first cause of action by Sam's West is a contribution claim under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.* The Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." *See* 740 ILCS 100/2(a). For the claim to be viable, Sam's West would need to establish that the beer distributor is "subject to liability in tort" arising out of Keilman's injury. *Id.*; *see also People v. Brockman*, 143 Ill. 2d 351, 372, 574 N.E.2d 626 (1991) ("If the underlying claim does not create liability in tort, a third-party plaintiff may not recover on a contribution claim."). Keilman did not sue Hayes Beer Distributing Co., but Sam's West claims that the beer distributor proximately caused the injury.

The contribution claim rests on the notion that Hayes Beer Distributing Co. was negligent. Sam's West offers three negligence theories in its third-party complaint. First, Hayes Beer Distributing Co. failed to cause Keilman to "properly wrap the pallet of beer." *See* Third-Party Cplt., at ¶ 7(a) (Dckt. No. 22). Second, the company failed to train Keilman on "how to properly wrap the pallet of beer." *Id.* at ¶ 7(b). Third, Keilman lacked the "necessary equipment to perform [his] duties." *Id.* at ¶ 7(c).

Sam's West cannot overcome a simple obstacle. The accident had nothing to do with Keilman's shrink wrapping skills (or lack thereof). There is no evidence in the record that he injured himself while wrapping pallets of beer.

Instead, the undisputed evidence is that Keilman suffered an injury while walking back to his truck. "On April 13, 2016, *after* covering his pallets of outdated beer with shrink-wrap, Plaintiff started to walk between two (2) of Sam's Club's blue pallets towards his truck to get his power jack." *See* Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 43 (Dckt. No. 96) (emphasis added). And again: "*After* shrink-wrapping the outdated product, Plaintiff walked toward his truck to get his pallet jack to load the outdated product onto his truck." *See* Sam's West Inc.'s Statement of Additional Facts, at ¶ 7 (Dckt. No. 97) (emphasis added); *see also id.* at ¶ 9 ("On his way to get his pallet jack, Plaintiff tripped and fell over rolled-up shrink wrap that appeared to be caught underneath a nearby blue pallet.").

Keilman didn't fall over his own shrink wrap. There is no evidence that Keilman tripped over shrink wrap that he was holding, or stumbled over shrink wrap that he personally placed on the floor. In fact, Keilman testified that it was "impossible" that he tripped over his own shrink wrap:

6

> Q: Okay. But the shrink wrap that caused you to fall, it wasn't the shrink wrap that you had just used to shrink wrap your out-of-date pallets?
>
> A: Impossible.

*See* Keilman Dep., at 48:15-18 (Dckt. No. 97-5, at 13 of 45).

It was "impossible" for a simple reason. The shrink wrap was underneath two pallets. *See* Sam's West Inc.'s Statement of Additional Facts, at ¶ 9 (Dckt. No. 97) ("Plaintiff tripped and fell over rolled-up shrink wrap that appeared to be caught underneath a nearby blue pallet."); Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 53 (Dckt. No. 96) (admitting that the shrink wrap was "underneath the two pallets"); *id.* at ¶ 56 (admitting that the pallets were "on top of the shrink wrap"). More specifically, the shrink wrap was under pallets belonging to Sam's Club, not the beer company. *Id.* at ¶¶ 48–52 (Dckt. No. 96).

Keilman did not put the Sam's Club pallets on top of the shrink wrap. *Id.* at ¶ 56. Someone else did that. And the pallets were already there when Keilman arrived. *See* Keilman Dep., at 49:10-11 (Dckt. No. 97-5, at 14 of 45) ("It was there when I got there, two Sam's Club pallets.").

So the pallets were already there, and the pallets were on top of the shrink wrap. *Id.* at 50:10-12 ("[T]hat shrink wrap was already there because you can only get shrink wrap underneath by setting the pallets down on top of it."). That means that the shrink wrap was already there, too, and Keilman didn't put it there. *See* Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 56 (Dckt. No. 96).

There's no evidence that Keilman tripped over his own shrink wrap. Theoretically speaking, maybe it's possible that Keilman left the shrink wrap on the floor, and then someone came along with a speedy forklift and deposited two pallets while he was walking circuitously to

7

his truck, and *then* Keilman tripped over his own unfortunately-placed shrink wrap. But that scenario is nothing but a hypothetical, backed by no facts. And Sam's West does not float that theory, let alone offer any supporting evidence.

All the training in the world about how to shrink wrap a pallet wouldn't have done Keilman any good when he was strolling back to the truck. He was walking, not shrink wrapping. So there is no evidence that poor shrink wrapping skills caused the accident.

Sam's West does muster any facts to support its claim, let alone enough facts to get to a jury. The response spans little more than a page.

Sam's West suggests that the pallet jack was to blame. Sam's West draws attention to the fact that Keilman had "just finished wrapping the outdated product," and "was walking toward his pallet jack (issued by Hayes and pursuant to his training and direction from Hayes)." *See* Resp. Brf., at 5 (Dckt. No. 95). In its view, "Hayes, therefore, proximately caused Plaintiff's injuries by directing him to complete the tasks that lead [sic] to his injury." *Id.* at 6.

But the pallet jack doesn't have anything to do with the accident, except for the fact that Keilman was walking in that direction. He didn't injure himself while using the pallet jack. He didn't trip over the pallet jack, either. He tripped over shrink wrap.

Sam's West also points out that Keilman was "injured while carrying out his work duties on behalf of Hayes." *Id.* at 6. That is true, but beside the point. Sam's West advanced a negligence theory, but Hayes Beer Distributing Co. wasn't negligent simply because it employed Keilman to deliver and pick up beer.

In the end, Sam's West failed to come forward with sufficient evidence to support a jury verdict that Hayes Beer Distributing Co. acted negligently. The Court grants summary judgment to Hayes Beer Distributing Co. on the contribution claim.

8

## II.   Breach of Contract and Indemnification

The next two claims rest on the SHORT FORM VENDOR AGREEMENT, which contains an indemnification provision. *See* Agreement (Dckt. No. 83-5, at 23 of 39). Sam's West claims that it is entitled to indemnification under that Agreement. But there is a basic problem – Sam's West is not a party to the contract, and is not a third-party beneficiary, either.

As the name suggests, the SHORT FORM VENDOR AGREEMENT is both short and a form. The contract spans four pages. The first page is simply a fill-in-the-blanks form. The vendor (here, Hayes Beer Distributing Co.) provided information such as its address, federal tax identification number, and so on. The parties signed at the bottom of page one. The second page is the Purchase Order Terms and Conditions. The last two pages are entitled "WAL-MART STORES, INC. STANDARDS FOR 'VENDORS'" and contain aspirational goals.

An indemnification provision appears on the first page, right above the signatures, and on the second page, too (the second page is more readable). It reads: "Indemnification: Vendor shall protect, defend, hold harmless and indemnify Purchaser from and against any and all claims, actions, liabilities, losses, costs and expenses, including reasonable attorney fees and costs . . . arising out of any actual or alleged death of or injury to any person . . . ."[1] *See* Agreement (Dckt. No. 83-5, at 23–24 of 39).

---

[1] The sentence is long, and it includes potentially important language at the end of the sentence that no party discusses. The provision does require the Purchaser to indemnify the Vendor for claims arising out of "injury to any person." *See* Agreement (Dckt. No. 83-5, at 24 of 39) (emphasis added). But it doesn't stop there. The language continues: "arising out of any actual or alleged death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, *resulting or claimed to result in whole or in part from* any actual or alleged defect in such merchandise, whether latent or patent, including actual or alleged improper construction or design of said merchandise or the failure of said merchandise to comply with specifications or with any express or implied warranties of Vendor, or arising out of any actual or alleged violation of such merchandise, or its manufacturer [sic?], possession or use or sales, of any law, statute or ordinance of any governmental administrative order, rule or regulation arising out or [sic? presumably it should be "arising out of"] Vendor's installation of merchandise covered by this agreement." *Id.* (emphasis added). That 186-word sentence is quite a mouthful. One possible reading of the provision – perhaps the best reading – is that the language that

9

Sam's West points to that language and claims that it is entitled to indemnification from Hayes Beer Distributing Co. But Sam's West cannot invoke rights under that Agreement unless it is a party to the contract, or unless it is a third-party beneficiary. *See Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013); *City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011). And on that score, Sam's West gets tripped up.

The Agreement is not a model for clarity about who, exactly, are the parties to the contract. On the Vendor side, it is simple enough. The Agreement identifies the "Vendor" as "Hayes Beer Distributing." *See* Agreement (Dckt. No. 83-5, at 23 of 39).

But the identity of the counterparty requires a closer inspection. The signature block does not define which entity in the Wal-Mart corporate family entered into the Agreement. It refers to the "PURCHASER" and the "Buyer" (both singular). *Id.* But those terms are undefined on page one. So, identifying the other party requires a little digging.

Page one repeatedly uses the term "Purchaser," and points to the accompanying "TERMS AND CONDITIONS," meaning page two. That page defines "Purchaser" as the "person, firm or corporation named on the face hereof by whom this order is issued." *See* Agreement (Dckt. No. 83-5, at 24 of 39).

So, who is "named"? *Id.* The top left corner of page one provides the answer. The Agreement refers to "WAL-MART STORES, Inc.," and then provides the address for its corporate office. *Id.* (Dckt. No. 83-5, at 23 of 39). That's a good indication – right off the bat – that Wal-Mart Stores, Inc. is the other party to the contract. Only one corporate entity is "named" in the Agreement.

---

follows "resulting . . . from" is a limitation on the earlier language. That is, maybe the indemnification provision covers personal injuries, but only if they arise from a "defect" with the product, or from a "failure . . . to comply" with warranties, and so on. Still, the parties do not address it, and Hayes Beer Distributing Co. makes no such argument. So the Court doesn't reach the issue.

Below that name, the form includes three boxes, with three names. *Id.* (Recall that it's a fill-in-the-blanks form, with boxes to check.) The first box says "WAL-MART." The second, "SAM'S CLUB." And the third, "SUPERCENTER." The parties checked two of the boxes: "WAL-MART" and "SUPERCENTER." *Id.* They did not check the other box, meaning "SAM'S CLUB." *Id.* That's another indication that Wal-Mart Stores, Inc. was a party to the Agreement, and that Sam's West (d/b/a Sam's Club) was not.

Sam's West argues that the reference to Sam's Club on the form means that it covers Sam's West, even if the box was unchecked. *See* Resp. Brf., at 8 (Dckt. 95). But that interpretation would render the checkmarks irrelevant. Under Illinois law, "courts should not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881–82 (7th Cir. 2015) (internal citation and quotation marks omitted).

The parties took a pen and checked two of the three boxes, but did not check the box for "SAM'S CLUB." They had an opportunity to express an intent to include Sam's Club, but they took a pass. Under the interpretation floated by Sam's West, the checkmarks would be meaningless, signifying nothing. But the checkmarks mean something, and so does the absence of a checkmark in the "SAM'S CLUB" box. An unchecked box does not mean the same thing as a checked box.

The last two pages provide more textual clues that Wal-Mart Stores, Inc. was the counterparty to the contract. Its name appears prominently, front and center, right at the top: "WAL-MART STORES, INC. STANDARDS FOR 'VENDORS.'" *See* Agreement (Dckt. No. 83-5, at 25 of 39). The last two pages include at least three references to "Wal-Mart Stores, Inc."

11

The very first sentence begins with "Wal-Mart Stores, Inc.," and the last page includes a couple references to "Wal-Mart Stores, Inc." *See* Agreement (Dckt. No. 83-5, at 25–26 of 39). The final two pages contain many references to "Wal-Mart," without a single reference to Sam's Club or Sam's West.

The identities of the signatories add credence to the notion that Wal-Mart Stores, Inc., not Sam's West, was a party to the contract. Two (or possibly three) executives signed on behalf of the buyer. (The parties are not consistent. And some of the signatures are hard to read.) At one point, the parties agree that Scott Huff and Kurt Edgell signed the Agreement for the buyer. *See* Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 18 (Dckt. No. 83) ("On April 19, 2006, Scott Huff and Kurt Edgell[] signed a four (4) page vendor agreement with Hayes."); Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 18 (Dckt. No. 96) ("Undisputed."). In another filing, the parties agree that Scott Huff and Maria Carderelli signed the contract for the buyer. *See* Sam's West Inc.'s Statement of Additional Facts, at ¶ 11 (Dckt. No. 97) ("The Vendor Agreement is signed by former Walmart buyer, Maria Carderelli, and former Vice President of Consumables, Scott Huff."); Hayes Beer Distributing's Reply to Sam's West Inc.'s Statement of Additional Facts, at ¶ 11 (Dckt. No. 99) (quibbling, and noting that Carderelli and Huff were current employees, not former employees, when they signed the contract).

But the key point is undisputed. Huff, Edgell, and Carderelli were employees of Wal-Mart Stores, Inc., not Sam's West. *See* Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts, at ¶ 10 (Dckt. No. 83) ("On April 19, 2006, Scott Huff, Maria Cardarelli a/k/a Emi Beltran, and Kurt Edgell were employees of Wal-Mart Stores, Inc."); Sam's West Inc.'s Resp. to Hayes Beer Distributing's Local Rule 56.1 Statement of Undisputed Facts,

at ¶ 10 (Dckt. No. 96) ("Undisputed."); Sam's West Inc.'s Statement of Additional Facts, at ¶¶ 11, 15, 18 (Dckt. No. 97); Hayes Beer Distributing's Reply to Sam's West Inc.'s Statement of Additional Facts, at ¶¶ 11, 15, 18 (Dckt. No. 99). There is no evidence in the record that they signed the Agreement as agents of Sam's West, Inc.

In Illinois, contracts "must be construed to give effect to the intention of the parties which, when there is no ambiguity in the terms of the [contract], must be determined from the language of the [contract] alone." *See Flora Bank & Trust v. Czyzewski*, 222 Ill. App. 3d 382, 388, 164 Ill. Dec. 804, 583 N.E.2d 720 (1991). The plain language of the contract controls its meaning. "When construing a contract, courts traditionally apply the 'four corners rule' and look to the language of the contract alone to give effect to the intent of the parties." *See W. Bend Mut. Ins. Co. v. Talton*, 2013 IL App (2d) 120814, ¶ 19, 375 Ill. Dec. 473, 997 N.E.2d 784 (2013); *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 349 Ill. Dec. 936, 948 N.E.2d 39 (2011) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning.").

The four corners of the Agreement give no indication that Sam's West was a party to the contract. The name "Sam's West" never appears. There is only one reference to "SAM'S CLUB," but it is an *unchecked* box, signaling that Sam's Club wasn't part of the deal. There are lots of clues that Wal-Mart Stores, Inc. was a party to the contract, and there is no indication that Sam's Club was a party, too.

One can imagine a situation in which parties make a mutual mistake about who, exactly, is a party to the contract. *See, e.g.*, *Praxair, Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1034 (7th Cir. 2000) (citing *Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864) (involving mutual mistake about the ship *Peerless*)). But that's not this case. There is no

evidence in the record that the Agreement contained a mistake. There is no evidence that there was a meeting of the minds – and that the parties intended Sam's West to be a party to the contract, but neglected to do it right.

Sam's West makes no such argument. If anything, Sam's West submitted material that bolsters the notion that Wal-Mart Stores, Inc. was the party to the contract. The record includes a letter from defense counsel dated June 16, 2017, shortly after the filing of the lawsuit. Counsel for Sam's West wrote: "At the time of the incident, the Vendor Services Agreement . . . between *Wal-Mart Stores, Inc.* and Hayes Beer Distributing ('Hayes'), dated April 10, 2006, governed the agreement between Wal-Mart and Hayes . . . ." *See* 6/16/17 Letter (Dckt. No. 83-5, at 27 of 39) (emphasis added).

After reading the contract as a whole, the Court holds that Wal-Mart Stores, Inc., not Sam's West, was a party to the Agreement. Sam's West cannot take advantage of the indemnification provision because it is not a party to the contract.

Sam's West is not a third-party beneficiary, either. Sam's West does not point to any language in the Agreement entitling the subsidiaries of Wal-Mart Stores, Inc. to indemnification. *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2008) ("There is a strong presumption in Illinois law against the creation of contractual rights in third parties; any intent to benefit a third party must be discernible in the language and circumstances of the contract.") (citations omitted); *Indigo Old Corp., Inc. v. Guido*, 2020 WL 7013962, at *4 (N.D. Ill. 2020) ("Illinois has made it very difficult to prove intent to benefit the third party, because 'there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties.'") (quoting *Quinn v. McGraw Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999)) (emphasis in original); *see also Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d

217, 219–20 (7th Cir. 1996). In any event, Sam's West does not argue that it is a third party beneficiary, so the argument is waived.

Sam's West repeatedly points out that it is a "wholly owned subsidiary of Wal-Mart Stores, Inc." *See* Sam's West Inc.'s Response to Hayes Beer Distributing's Motion for Summary Judgment, at 5, 8–9 (Dckt. 95). That may be true, but it does not change a thing. A parent and a subsidiary are distinct entities with a separate legal existence. *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."); *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) (explaining that parent corporations and their subsidiaries are "separate entities and the acts of one cannot be attributed to the other"); *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 204, 56 Ill. Dec. 14, 427 N.E.2d 94 (1981) ("It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated."); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 667 (Del. Ch. 2012) ("[T]he separate legal existence of juridical entities is fundamental to Delaware law."); *Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (Strine, J.) ("[O]ur corporation law is largely built on the idea that the separate legal existence of corporate entities should be respected – even when those separate corporate entities are under common ownership and control."); *Leslie v. Telephonics Office Tech., Inc.*, 1993 WL 547188, at *8 (Del. Ch. 1993) ("Delaware courts have upheld the legal significance of corporate form, in a corporate-subsidiary complex, despite the fact of substantial overlap in the management and control of the two entities."); *see also* 1 William Meade Fletcher,

*Fletcher Cyclopedia of the Law of Corporations* § 26 (2020) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.").

A contract between a parent and a third party is not the same thing as a contract between a subsidiary and a third party. A subsidiary has no automatic entitlement to a parent's contractual rights. In the absence of veil-piercing or some other argument (which isn't an issue here), Wal-Mart Stores, Inc. and Sam's West are distinct entities with distinct rights. And Wal-Mart Stores, Inc. has contractual rights under the Agreement, but Sam's West does not.

Finally, Sam's West argues that Hayes Beer Distributing Co. delivered beer to the store in question for years, so they conducted business like there was a contractual relationship. Maybe so. Conduct can give rise to a contract. "A contract implied in fact is an actual contract; the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct." *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 267 Ill. App. 3d 742, 750, 205 Ill. Dec. 294, 643 N.E.2d 245 (1994). "[I]n order to prove an implied contract, [a party] must prove the same elements as an express contract." *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007).

Presumably Sam's West is arguing that there is an implied *contract* between Sam's West and Hayes Beer Distributing Co., not an implied *term* in the express contract between Wal-Mart Stores, Inc. and the beer distributor. "An implied contract cannot coexist with an express contract on the same subject." *Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011) (citation and brackets omitted); *see also Barry Mogul & Assocs.*, 267 Ill. App. 3d at 753

("[P]romises should not be found by process of implication if they would be inconsistent with express provisions that there is no reason to set aside or to hold inoperative.") (citation omitted).

But there is a difference between inferring a contract and inferring a specific term. Evidence of an implied contract is not the same thing as evidence of an intent to indemnify. Sam's West is "confusing the existence of an implied agreement with the terms of such an agreement." *See Nissan N. Am.*, 486 F.3d at 997 (explaining that an implied-in-fact contract would not necessarily contain an arbitration clause absent evidence showing an intent to arbitrate); *see also Lirtzman v. Fuqua Indus., Inc.*, 677 F.2d 548, 551 (7th Cir. 1982) ("The parties' minds must meet through offer and acceptance, and the contract must be definite in its terms.") (citation omitted); *Brody v. Finch Univ. of Health Scis./Chicago Med. Sch.*, 298 Ill. App. 3d 146, 154, 232 Ill. Dec. 419, 698 N.E.2d 257 (1998) ("A contract implied in fact contains all of the elements of an express contract, as well as a meeting of the minds."). There is no evidence in the record that there was a meeting of the minds that Hayes Beer Distributing Co. would indemnify Sam's West.

In the end, Sam's West has come forward with a contract between Wal-Mart Stores, Inc. and Hayes Beer Distributing Co. There is nothing in the Agreement, and nothing in the record, supporting the notion that Sam's West has rights under that contract, too. The Court grants summary judgment to Hayes Beer Distributing Co. on the breach of contract and indemnification claims.

## Conclusion

For the foregoing reasons, the Court grants Hayes Beer Distributing Company's motion for summary judgment.

Date: February 9, 2021

Steven C. Seeger
United States District Judge

18